UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MAURA OLGA STOUTER,

                       Plaintiff,                         MEMORANDUM
                                                          OPINION AND ORDER

          -against-                                CV 07-2707 (ETB)

SMITHTOWN CENTRAL SCHOOL DISTRICT,

                       Defendant.
------------------------------------------------------------------------X

Before the court is the defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, with respect to all of the claims alleged by the plaintiff in this action. Plaintiff opposes defendant's motion and asserts that genuine issues of material fact exist that necessitate a trial. For the following reasons, the defendant's motion is granted in part and denied in part.

FACTS

The plaintiff, Maura Olga Stouter ("Stouter"), is a Caucasian female who, at the time of the filing of the Complaint in this action - July 5, 2007 - was fifty-nine years old. (Def. R. 56.1 Statement ("Def. 56.1") ¶¶ 6, 8; Pl. R. 56.1 Statement ("Pl. 56.1") ¶¶ 6, 8.) Plaintiff is a lesbian. (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.)

Plaintiff was employed by the defendant, Smithtown Central School District ("Smithtown"), as a physical education teacher from 1970 to June 2003. (Def. 56.1 ¶¶ 3-4; Pl. 56.1 ¶¶3-4.) Plaintiff also served as a volleyball coach for Smithtown from 1970 to June 2006.

-1-

(Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)

Plaintiff began coaching varsity girls volleyball at Smithtown in 1971. (Def. 56.1 ¶ 10; Def. 56.1 ¶ 10.) During her tenure as the varsity volleyball coach, plaintiff's teams won numerous local, county and regional championships. (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.) Plaintiff also received numerous awards and accolades for her coaching achievements and was involved in several volleyball-related organizations. (Def. 56.1 ¶¶ 12-13; Pl. 56.1 ¶¶ 12-13.)

In or about May 2001, plaintiff submitted her resignation, for purposes of retirement, as a physical education teacher for Smithtown. (Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14.) Plaintiff's retirement became effective July 1, 2003. (Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15.) Plaintiff continued to coach volleyball for three years after her retirement. (Def. 56.1 ¶¶ 17, 42; Pl. 56.1 ¶¶ 17, 42.)

Beginning with the 2003/2004 school year, Patrick Smith ("Smith"), was appointed as Smithtown's Coordinator of Physical Education Athletics and Health Education.[1] (Smith Dep. 56.) In that capacity, Smith served as plaintiff's supervisor. (Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) Smith was aware of plaintiff's sexual orientation. (Smith Aff. ¶ 8.)

At some point during 2004, plaintiff advised Smith of concerns she had concerning Smithtown's compliance with Title IX's requirements.[2] (Def. 56.1 ¶ 32; Smith Aff. ¶ 24.) Smith advised plaintiff that he would conduct an evaluation and assessment of Smithtown's Title IX compliance. (Def. 56.1 ¶ 33; Pl. 56.1 ¶ 33.) Smith's evaluation and final report concluded that

---

[1] Plaintiff was appointed to coach varsity girls volleyball for the 2003/2004 school year by Smith's predecessor, Nick Schroeder. (Pl. Ex. A.)

[2] Title IX "prohibits discrimination on the basis of sex by educational institutions receiving federal financial assistance." McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 286 (2d Cir. 2004).

Smithtown was in compliance with Title IX, such that it had substantially proportionate ratios of enrollment and corresponding athletic opportunities for boys and girls. (Def. 56.1 ¶ 34.) Plaintiff disagreed with Smith's findings and prepared her own assessment of Smithtown's Title IX compliance, entitled "A Stouter Perspective on the Thinning Opportunities in Smithtown Sports." (Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.) Plaintiff's assessment maintained that Smith's analysis was incorrect and that Smithtown was not in compliance with Title IX. (Def. 56.1 ¶ 37; Pl. 56.1 ¶ 37.)

On September 19, 2005, Smith sent plaintiff a letter, reprimanding her for interfering with another Smithtown athletic program - junior varsity girls volleyball - of which she was not the coach.[3] (Def. Ex. Q; Def. 56.1 ¶ 49.) In response to certain complaints that Smith had received from parents and athletic officials concerning plaintiff,[4] Smith's letter also warned that plaintiff's "continuous condescending remarks, bullying and inappropriate behavior . . . [was] unwarranted and unprofessional . . . and [would] not be tolerated." (Smith Aff. ¶ 55; Def. Ex. Q.) Smith advised plaintiff that her "varsity assignment [would] be closely monitored and evaluated at the conclusion of [the] season." (Def. Ex. Q.)

Plaintiff responded by letter dated September 29, 2005, asserting that Smith's September 19, 2005 letter contained "unsubstantiated and slanderous statements," which were "unwarranted." (Def. Ex. R. ) Plaintiff disputed Smith's assertion that she had interfered with the junior varsity girls volleyball team and asserted that Smith "wish[ed] to end [her] highly

_____

[3] Plaintiff maintains that she did not interfere with the junior varsity girls volleyball program. (Pl. 56.1 ¶ 49.)

[4] Plaintiff disputes the veracity of the complaints lodged against her. (Stouter Aff. ¶ 60.)

successful career with false statements and misrepresentations of events." (Def. Ex. R.) Plaintiff further asserted that Smith was "abus[ing] . . . [his] authority as Director of Athletics." (Def. Ex. R.) However, plaintiff suggested that she and Smith work to "rebuild [their] professional relationship" by employing the assistance of a mediator. (Def. Ex. R.)

By letter dated October 11, 2005, plaintiff revised her September 29, 2005 letter to Smith. (Def. Ex. S.) Plaintiff's October 11, 2005 letter reiterated essentially the same assertions as the September 29, 2005 letter. (Def. Ex. S.)

On or about February 16, 2006, plaintiff was advised by Smith that she would not be reappointed as a coach by Smithtown. (Stouter Aff. ¶ 59; Smith Aff. ¶ 59.) In or about July 2006, Smithtown hired Kelly Bebee ("Bebee") to replace plaintiff as the varsity girls volleyball coach. (Def. 56.1 ¶ 55; Def. Ex. T.) Bebee is a female and less than forty years old. (Def. 56.1 ¶ 55.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 8, 2006 and received a Right to Sue letter dated April 17, 2007. (Compl. ¶¶ 5-6.) Plaintiff commenced the within action on July 5, 2007, alleging the following claims: (1) discrimination on the basis of gender and sexual orientation, as well as retaliation, pursuant to Title VII of the Civil Rights Act of 1694, 42 U.S.C. § 2000e et seq.; (2) age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; (3) gender discrimination and retaliation in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq.; and, (4) discrimination on the basis of gender, sexual orientation and age, as well as retaliation, pursuant to the New York Human Rights Law, N.Y. Exec. Law § 290 et seq..

I.      Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady

v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

Motions for summary judgment in employment discrimination actions should be evaluated with special care. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted). Since "direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Id. (quoting Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)). Even in the discrimination context, however, a plaintiff "must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp, 118 F.3d at 110 (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

II.  Timeliness of Plaintiff's Claims

Both Title VII and the ADEA require that a plaintiff file a charge with the EEOC as a prerequisite to the filing of a federal action. See McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006); Kubicek v. Westchester County, No. 08-CV-372, 2009 U.S. Dist. LEXIS 117061, at *14 (S.D.N.Y. Oct. 8, 2009) (citation omitted). Such a charge must be filed no more than 300 days from the date of the alleged discriminatory conduct. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); see also Kubicek, 2009 U.S. Dist. LEXIS 117061, at *14.

"The filing deadlines for a charge of discrimination act as a 'statute of limitations' and a

failure to timely file a charge acts as a bar to a plaintiff's action." Kubicek, 2009 U.S. Dist. LEXIS 117061, at *15 (quoting Hill v. Citibank Corp., 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)).  Here, plaintiff filed her EEOC charge on August 8, 2006.  (Compl. ¶ 5.)  Accordingly, acts or events that occurred prior to October 12, 2005 are time-barred.

Plaintiff argues, however, that the limitations period should be extended under the "continuing violation" doctrine. "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Kubicek, 2009 U.S. Dist. LEXIS 117061, at *19 (quoting Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); Bernstein v. Mony Group, Inc., 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor.").

Under the continuing violation doctrine, "if a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)).  A continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Fitzgerald, 251 F.3d at 259 (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)).  Where a continuing violation is demonstrated, the plaintiff "is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." Fitzgerald, 251 F.3d at 359 (citing cases).

However, "discrete discriminatory acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996) ("[D]iscrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation."). Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. Such acts include "termination, failure to promote, denial of transfer, or refusal to hire" and constitute "separate actionable 'unlawful employment practice[s]." Id. at 114.

Hostile work environment claims, however, may constitute a continuing violation. See id. at 114-17. Because the "very nature [of a hostile work environment claim] involves repeated conduct, . . . [t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day." Id. at 114. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

With respect to the within action, the crux of plaintiff's Complaint is that Smithtown refused to reappoint her as a volleyball coach in 2006 for discriminatory reasons. This claim is clearly timely. However, plaintiff also alleges several other acts that occurred over a span of approximately three years, from 2003 to 2006, that she asserts constitutes a hostile work environment and for which the continuing violation doctrine should apply. These acts are as follows: (1) elimination of plaintiff's middle school coaching position in August 2004, (Stouter Aff. ¶¶ 21-22); (2) refusal to appoint plaintiff as the middle school volleyball coach for Great Hollow Middle School, and appointment of a younger male coach instead, in August 2004,

(Stouter Aff. ¶ 23); (3) rescheduling a volleyball match - at plaintiff's request - to an inferior date and time in October 2004, (Stouter Aff. ¶ 26); (4) reclassification of the volleyball program as an "outside organization" in June 2005, which resulted in the volleyball program having to pay to use Smithtown's athletic facilities,[5] (Stouter Aff. ¶¶ 37-41); and, (5) Smith's September 19, 2005 letter reprimanding plaintiff for allegedly interfering with the junior varsity girls volleyball program. (Stouter Aff. ¶ 44.)

With respect to plaintiff's claims concerning the elimination of her coaching position in 2004 and the refusal to appoint her to another middle school coaching position that same year, these acts are considered discrete discriminatory acts - i.e., termination and refusal to hire - under the Supreme Court's decision in Morgan and therefore cannot be properly considered as part of a continuing violation. See Morgan, 536 U.S. at 113-14. Accordingly, those claims are time-barred.

As to plaintiff's remaining claims that fall outside of the limitations period - the rescheduling of the volleyball match, the reclassification of the volleyball program as an "outside organization" and Smith's September 19, 2005 letter - since plaintiff alleges a hostile work environment claim, under Morgan, the Court may properly consider these untimely allegations. However, the Court finds that the rescheduling of the volleyball match, which occurred in October 2004, is too remote and isolated to establish a hostile work environment with respect to plaintiff's ultimate failure to be reappointed. This event took place more than eight months before the next event that plaintiff alleges as part of her hostile work environment claim and

_____

[5] This resulted from the failure of the proposed academic budget to pass, resulting in Smithtown being on austerity. (Stouter Aff. ¶ 37.)

more than one year before Smith advised plaintiff that she would not be reappointed as a volleyball coach.  While plaintiff may have a viable hostile work environment claim with respect to later events that occurred, the rescheduling of the volleyball match is too attenuated to be considered part of that claim.

Accordingly, the Court limits the continuing violation doctrine solely  to plaintiff's hostile work environment claims under Title VII and the ADEA and finds that it applies to those acts occurring in and after June 2005.

III.     Plaintiff's Title VII Claim for Sexual Orientation Discrimination

Pursuant to Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Nothing in the text of the statute protects an individual from discrimination on the basis of their sexual orientation.  Moreover, "the law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation."[6]  Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (quoting Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000)); see also Argeropoulos v. Exide Tech., No. 08-CV-3760, 2009 U.S. Dist. LEXIS 59009, at *8-9 (E.D.N.Y. July 8, 2009) ("It is indisputable that Title VII does not prohibit harassment or discrimination because of sexual

---

[6]  The Court notes that plaintiff's opposition papers fail to address Smithtown's argument with respect to plaintiff's sexual orientation discrimination claim.

orientation."); <u>McKenzie v. Gibson</u>, No. 07 Civ. 6714, 2008 U.S. Dist. LEXIS 64850, at *9 (S.D.N.Y. Aug. 25, 2008) (same).

Accordingly, plaintiff's claim for sexual orientation discrimination pursuant to Title VII fails as a matter of law and summary judgment is granted to Smithtown with respect to that claim.[7]

IV.     <u>Plaintiff's Title VII Disparate Treatment Claim</u>

Pursuant to Title VII, discrimination may be demonstrated through evidence of "disparate treatment," which focuses on "how an individual was treated compared to her similarly situated coworkers." <u>Smith v. Xerox Corp.</u>, 196 F.3d 358, 370 (2d Cir. 1999). To demonstrate disparate treatment, "the plaintiff is 'required to prove that the defendant had a discriminatory intent or motive." <u>Cosgrove v. Sears, Roebuck & Co.</u>, 9 F.3d 1033, 1041 (2d Cir. 1993) (quoting <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986 (1988)). The same analysis applies to claims brought pursuant to the New York Human Rights Law. <u>See</u> <u>Pollis v. New Sch. for Social Research</u>, 132 F.3d 115, 124 (2d Cir. 1997).

To establish a prima facie case of gender discrimination based on disparate treatment, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was terminated or subjected to some other adverse employment action; and, (4) the adverse employment action "occurred under circumstances giving rise to an inference of discrimination." <u>Romanello v. Shiseido Cosmetics Am., Ltd.</u>, No. 00 Civ. 7201,

_____

[7] This includes both the disparate treatment claim and the hostile work environment claim, as well as the wrongful termination claim, alleged in plaintiff's Complaint. (Compl. ¶¶ 128-60.)

2002 U.S. Dist. LEXIS 18538, at *15 (S.D.N.Y. Sept. 30, 2002) (citing <u>Weinstock v. Columbia</u> <u>Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000)) (additional citation omitted).  In the within action, it is undisputed that plaintiff satisfies the first three components of the prima facie case.  Smithtown asserts, however, that plaintiff cannot demonstrate the fourth component - that its refusal to reappoint plaintiff as the varsity girls volleyball coach in 2006 occurred under circumstances giving rise to an inference of discrimination.  The Court agrees with Smithtown.

Plaintiff alleges that Smithtown's refusal to reappoint her as the varsity girls volleyball coach was discriminatory because "[m]ale coaches were allowed to continue Varsity coaching at Smithtown after retiring from teaching," while her request was denied.  (Stouter Aff. ¶ 89.) According to plaintiff, she was "the only coach who requested the ability to continue to coach her primary sport and who was terminated from her coaching position."  (Stouter Aff. ¶ 89.) However, plaintiff offers no evidence whatsoever to support this conclusory allegation.  In fact, plaintiff's opposition to Smithtown's motion with respect to her gender discrimination disparate treatment claims consists of nothing more than a paragraph setting forth the elements of a prima facie case of gender discrimination and the statement that "Stouter meets all of those criteria." (Pl. Mem. of Law 18.)

Smithtown, however, asserts that plaintiff is the only retired female teacher who has sought to continue coaching after her retirement.  (Smith Aff. ¶ 47.)  Plaintiff does not dispute this and, in fact, testified at her deposition that she is the "only retired woman coach."  (Stouter Dep. 83.)  Moreover, plaintiff was not denied reappointment from the outset.  Rather, she was reappointed to coach varsity girls volleyball for three consecutive years following her retirement, beginning in 2003.  (Smith Aff. ¶ 47.)  It was not until 2006 that plaintiff was advised that she

would not be reappointed again. (Smith Aff. ¶ 48.)

In addition, as Smithtown argues in its motion papers - and which plaintiff fails to address or oppose - Smith is the individual responsible for both granting plaintiff's requests for reappointment in 2004 and 2005 as well as denying plaintiff's request for reappointment in 2006. "A plaintiff's being hired and fired by the same manager is a highly relevant factor suggesting that invidious discrimination was unlikely." Chin v. ABN-Amro N. Am., Inc., 463 F. Supp. 2d 294, 304 (E.D.N.Y. 2006) (citing cases); see also Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.").

Finally, the undisputed evidence here is that plaintiff's replacement as the varsity girls volleyball coach was also female. While not dispositive, this fact weighs against a finding of discrimination on Smithtown's part. See, e.g., Williams v. Palladia, Inc., No. 07 CV 7720, 2009 U.S. Dist. LEXIS 15516, at *26 (S.D.N.Y. Feb. 10, 2009) (finding that plaintiff failed to demonstrate a prima facie case of gender discrimination in part because he was replaced by another male); Romanello, 2002 U.S. Dist. LEXIS 18538, at *20 (finding that "no reasonable jury could find that plaintiff was discriminated against because of her gender" because the same women who hired plaintiff also fired her and because she was replaced by another person of the same gender).

Based on the foregoing, the Court finds that the circumstances surrounding the denial of plaintiff's request for reappointment as the varsity girls volleyball coach do not give rise to an inference of discrimination based on plaintiff's gender. Accordingly, plaintiff has failed to

demonstrate a prima facie case of gender discrimination based on disparate treatment pursuant to Title VII and the New York Human Rights Law and Smithtown is granted summary judgment with respect to those claims.

V.    Plaintiff's ADEA Claims[8]

Plaintiff also alleges that Smithtown discriminated against her - and ultimately refused to reappoint her as a volleyball coach - on the basis of her age.  Although courts have routinely analyzed ADEA claims under the same framework as Title VII, the Supreme Court has recently held that "the Court's interpretation of the ADEA is not governed by Title VII decisions."  Gross v. FBL Fin. Servs., Inc., __ U.S. __, 129 S. Ct. 2343, 2349 (2009).  According to the Supreme Court, while Title VII permits "mixed-motives" claims, such that "a plaintiff may establish discrimination by showing that [her inclusion in a protected class] was simply a motivating factor" in the employer's adverse employment action, the ADEA does not authorize such claims. Id. at 2349-50.  Rather, to establish a claim "under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  Id. at 2350.  Accordingly, under the ADEA, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."[9]  Id. at 2351.

_____

[8]  Plaintiff's Complaint contains causes of action for both age discrimination and retaliation under the ADEA.  The age discrimination cause of action contains claims for both disparate treatment and a hostile work environment.

[9]  It is unclear whether the Supreme Court's holding in Gross extends to age discrimination claims brought pursuant to the New York Human Rights Law.  "Neither the Second Circuit nor the New York Court of Appeals has addressed this question."  Weiss v. JP Morgan Chase & Co., No. 06 Civ. 4402, 2010 U.S. Dist. LEXIS 2505, at *6 (S.D.N.Y. Jan. 13. 2010).

Here, plaintiff asserts that she was discriminated against - and ultimately denied reappointment as a volleyball coach - due to her age, her sexual orientation, her gender and in retaliation for voicing concerns regarding Smithtown's Title IX compliance, as well as discrimination against girls' sports in general. In support of her age discrimination claim, plaintiff offers the following evidence: (1) she has been told by other people that both Smith and Kelly Bebee - her replacement as the varsity volleyball coach - said that she was "too old for the job," had "slowed down," and was "old school," (Stouter Aff. ¶ 75); and, (2) her replacement as the varsity girls volleyball coach was under the age of forty. (Stouter Aff. ¶ 73.)

To establish a prima facie case of age discrimination under the ADEA, plaintiff must demonstrate that: (1) she was in the protected age group; (2) she was qualified for the position she held; (3) she was subject to an adverse employment action; and, (4) the adverse employment action "occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (citing Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002)). The same analysis applies to age discrimination claims brought pursuant to the New York Human Rights Law. See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997) ("Age discrimination claims brought under the New York State Human Rights Law . . . are governed by the same standards as those brought under the ADEA."). Smithtown does not dispute that plaintiff has established the first three criteria necessary to demonstrate a prima facie case. However, Smithtown asserts that plaintiff cannot establish that the failure to reappoint her as the varsity girls volleyball coach occurred under circumstances giving rise to an inference of discrimination. The Court agrees.

As a threshold matter, plaintiff has offered nothing more than inadmissible hearsay, from

unidentified sources, to support her claim that Smith and Bebee made age-related comments about her. Such evidence is insufficient to defeat summary judgment. See Fed. R. Civ. P. 56(e) (requiring that supporting or opposing affidavits on summary judgment "set out facts that would be admissible in evidence"); Feinerman v. T-Mobile USA, No. 08 Civ. 3517, 2010 U.S. Dist. LEXIS 7007, at *23 (S.D.N.Y. Jan. 28, 2010) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

Accordingly, the only other fact upon which plaintiff bases her ADEA claim is that she was replaced by someone who is significantly younger. "[A]llegations of replacement by younger workers do not, without more, prove discrimination." O'Sullivan v. New York Times, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) (citing cases); see also Suttell v. Manufacturers Hanover Trust, 793 F. Supp. 70, 73 (S.D.N.Y. 1992) (finding that the "mere fact" that a younger person was performing plaintiff's duties did not give rise to an inference of age discrimination).

Moreover, as Smithtown points out - and plaintiff does not dispute - although not required to reappoint plaintiff as a coach after she retired from her teaching position, Smithtown chose to do so for three consecutive years. For two of those years, Smith made the decision to reappoint plaintiff. As discussed above in connection with plaintiff's gender discrimination claim, where the same individual is responsible for both hiring and firing the plaintiff, it suggests that discrimination is unlikely. See Chin, 463 F. Supp. 2d at 304. Moreover, plaintiff herself asserts in her affidavit that other coaches "over the age of 55" were permitted to continue coaching at Smithtown after retiring from teaching. (Stouter Aff. ¶ 89.) Such evidence weighs against a finding of discrimination. See, e.g., Rodriguez v. Pierre N.Y., 299 F. Supp. 2d 214, 218 (S.D.N.Y. 2004) (granting summary judgment to employer where plaintiff failed to produce,

among other things, evidence that the employer had fired anyone else over the age of forty); <u>Carr v. WestLB Admin., Inc.</u>, 171 F. Supp. 2d 302, 308 (S.D.N.Y. 2001) ("[P]laintiff's theory is belied by defendant's uncontroverted evidence that almost half of plaintiff's former coworkers are over forty years of age . . . .").

Accordingly, plaintiff has failed to establish a prima facie case of age discrimination pursuant to the ADEA or the New York Human Rights Law and Smithtown is granted summary judgment with respect to those claims.[10]

VI.     <u>Plaintiff's Title IX Gender Discrimination Claim</u>

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). The Supreme Court has held that there is an implied private right of action under Title IX to enforce its prohibition on intentional sex discrimination, <u>see</u> <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 690-93 (1979), which includes retaliation.  <u>See</u> <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 173 (2005).

With respect to employees who attempt to pursue gender discrimination claims through Title IX, the Second Circuit "has not ruled whether an employee of a federally-funded educational institution can use Title IX to seek redress for employment discrimination on the basis of sex."  <u>Bastian v. N.Y. City Dep't of Educ.</u>, No. 04 Civ. 7450, 2008 U.S. Dist. LEXIS

_____

[10]  Plaintiff's ADEA retaliation claim is also dismissed due to the fact that there is nothing in the record before the Court that the plaintiff ever complained to anyone at Smithtown about age discrimination.

57467, at *19 (S.D.N.Y. July 29, 2008) (citing cases). Rather, the last case to consider the issue specifically chose not to reach the question, stating:

> While this court has previously indicated in <u>dicta</u> that "Title IX has been construed to prohibit gender discrimination in both students enrolled in federally supported educational programs and employees involved in such programs" and that any "aggrieved individual has an implied right of action for injunctive relief or monetary damages," . . . it should be noted that the only circuit to have decided the question has concluded that an employee of an educational institution has no private right of action for employment discrimination under Title IX. <u>See</u> <u>Lakoski v. James</u>, 66 F.3d 751, 754 (5th Cir. 1995) ("Given the availability of a private remedy under Title VII for aggrieved employees, we are unwilling to [find] . . . an implied private right of action for damages under Title IX for employment discrimination. Doing so would disrupt a carefully balanced remedial scheme for redressing employment discrimination by [university] employers . . . .").

<u>Torres v. Pisano</u>, 116 F.3d 625, 630 (2d Cir. 1997) (internal citation omitted).

The district courts within the Circuit are divided as to whether an implied private right of action exists under Title IX for employees alleging gender discrimination in the terms and conditions of their employment. <u>Compare</u> <u>AB v. Rhinebeck Cent. Sch. Dist.</u>, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) (finding an employee alleging gender discrimination was "eligible to bring an action under Title IX"); <u>Henschke v. New York Hosp.</u>, 821 F. Supp. 166, 172 (S.D.N.Y. 1993) ("This Court . . . finds that a private right of action for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy."), <u>with</u> <u>Mehrhoff v. William Floyd Union Free Sch. Dist.</u>, No. 04-CV-3850, 2005 U.S. Dist. LEXIS 46326, at *25-26 (E.D.N.Y. Aug. 22, 2005) (agreeing with the view that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex"); <u>Vega v. State Univ. of New York Bd. of Trustees</u>, No. 97 Civ. 5767, 2000 U.S.

Dist. LEXIS 4749, at *7-8 (S.D.N.Y. Apr. 12, 2000) (same); Burrell v. City Univ. of New York, 995 F. Supp. 398, 408 (S.D.N.Y. 1998) ("[T]his Court is persuaded that the remedies of Title IX are limited to student plaintiffs, and Title VII is meant to offer the exclusive remedy for employment discrimination based on sex."). There is also a split among several other Circuit Courts who have addressed the issue. See AB, 224 F.R.D. at 153 (collecting cases).

However, this Court need not reach the issue in the within action because it appears from plaintiff's opposition papers that she is only asserting a claim for retaliation under Title IX. In her Memorandum of Law in opposition to the within motion, plaintiff states that "[i]t is important to clarify for the record [her] position with respect to her Title IX claims." (Pl. Mem. of Law 16.) Plaintiff then goes on to focus her arguments solely on retaliation claims brought pursuant to Title IX, referring to her case as an "action-reaction situation[]" in which plaintiff would express concern over Smithtown's compliance with Title IX and Smith would then react in a discriminatory or inappropriate way. (Pl. Mem. of Law 17-18.) Accordingly, since plaintiff has failed to address her gender discrimination claim with respect to Title IX - even though it is pleaded in her Complaint - and chosen to only oppose defendant's motion as it concerns her Title IX retaliation claim, the Court deems the gender discrimination claim abandoned. See Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendant's motion for summary judgment on [plaintiff's abuse of process] claim, the claim is deemed abandoned and summary judgment should be granted on that basis alone."); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

For the foregoing reasons, Smithtown is granted summary judgment with respect to plaintiff's Title IX claim for gender discrimination.

VII.    Plaintiff's Remaining Claims

Having reviewed the papers in support of and in opposition to defendant's motion for summary judgment, the Court finds that genuine issues of material fact exist with respect to plaintiff's remaining claims for: (1) a hostile work environment based on gender, pursuant to Title VII and the New York Human Rights Law; (2) sexual orientation discrimination, pursuant to the New York Human Rights Law;[11] and, (3) retaliation, pursuant to Title VII, Title IX, and the New York Human Rights Law. Such issues of material fact preclude the entry of summary judgment with respect to those claims at this time.

Accordingly, defendant's motion for summary judgment with respect to the foregoing claims is denied.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part. The following claims fail as a matter of law and are hereby dismissed: (1) plaintiff's Title VII claim for sexual orientation discrimination; (2) plaintiff's claims for gender discrimination based on disparate treatment pursuant to Title VII and the New York Human Rights Law; (3) plaintiff's claims for age discrimination pursuant to the ADEA and the New

---

[11] Unlike Title VII, the New York Human Rights Law prohibits discrimination on the basis of sexual orientation. See N.Y. Exec. Law § 296(1)(a); see also Braunstein v. Barber, No. 06 Civ. 5978, 2009 U.S. Dist. LEXIS 32536, at *31 (S.D.N.Y. Mar. 27, 2009).

York Human Rights Law; (4) plaintiff's ADEA retaliation claim; and, (5) plaintiff's Title IX claim for gender discrimination. The remaining claims - (1) a hostile work environment based on gender, pursuant to Title VII and the New York Human Rights Law; (2) sexual orientation discrimination, pursuant to the New York Human Rights Law; and, (3) retaliation, pursuant to Title VII, Title IX, and the New York Human Right Law - present genuine issues of material fact and will be tried to a jury, limited to those events that occurred in or after June 2005.

**SO ORDERED:**

Dated: Central Islip, New York
February 12, 2010

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge